UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DONALD L. HILTON JR | § | |
| VS. | § | NO:  SA: 19-CV-00755-OLG |
| NICOLE PRAUSE and LIBEROS LLC | § | |

**PLAINTIFF'S  FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, DONALD L. HILTON JR (herein after referred to as Plaintiff Hilton or Doctor Hilton), files this First Amended Petition against NICOLE PRAUSE (herein after referred to as Defendant Prause) and LIBEROS, LLC (herein after referred to as Defendant Liberos) and alleges as follows:

**I.**
**CLAIM FOR RELIEF**

1.      Plaintiff Dr. Hilton seeks monetary relief not more than $10,000,000.00. Plaintiff reserves the right to modify this amount as the circumstances warrant.   Plaintiff also seeks a permanent injunction to the extent that the jury finds certain statements to be defamatory and to the extent that Defendants continue to publish such defamatory statements on-line or in other ongoing publications.

**II.**
**PARTIES**

2.      Plaintiff is an individual residing in San Antonio, Bexar County, Texas.

3.      Defendants are California residents.  They have both filed an Answer in this case and may be served through their counsel of record.

### III.
### JURISDICTION

4.      Defendant has removed this case to Federal Court on diversity jurisdiction grounds. Plaintiff does not dispute federal jurisdiction because the parties are from different states and because the amount in controversy exceeds $75,000.00.

### IV.
### VENUE

5.      Venue is proper in the Western District of Texas because the defamation alleged in this case occurred in Bexar County and the damages sustained by Plaintiff occurred in Bexar County, Texas.

### V.
### KEY ALLEGATIONS AND SUMMARY OF THE CASE

6.      This is a defamation *per se* case.  From April 16, 2019 through April 30, 2019, Defendant Nicole Prause intentionally and maliciously sent a series of written emails wherein she formally filed a written complaint with the University of Texas falsely accusing Dr. Hilton of sexually harassing her.  Dr. Hilton is the program director of the Methodist Hospital rotation for the neurosurgical residency program at University of Texas Health Science Center at San Antonio ("UT Health").  He is also the director of the spine fellowship at the Department of Neurosurgery at UT Health. Thus, Defendant Prause's false complaint to the University of Texas was specifically designed to destroy Dr. Hilton's reputation and career.

7.      Dr. Hilton has never sexually harassed Defendant Prause or anyone else.  In fact, Dr. Hilton has only had one personal encounter with Defendant Prause.  Dr. Hilton (with his wife standing next to him) met Defendant Prause briefly in a crowded meeting room on November 14,

2

2009 (almost 10 years ago) after a professional presentation he had given.[1]  During that meeting, Dr. Hilton and Defendant Prause discussed the substance of Plaintiff's presentation, but nothing inappropriate was said or done during that brief encounter. Dr. Hilton and Defendant Prause have not had any personal communications or interactions since that time – not face to face, not by phone, not by email or social media – nothing.  Dr. Hilton has never flirted with Defendant Prause, made any sexual advancements towards her, or committed any other type of sexual misconduct towards her. Dr. Hilton does not and never has conducted himself in that way.

8.      On May 20, 2019, Dr. Hilton received notice from the Texas Medical Board (TMB) that the TMB had received a complaint filed by Defendant Prause.  A copy of the notice letter is attached hereto and fully incorporated herein as Exhibit "B".  The notice letter states:

> It has been alleged that you are stalking, cyberstalking, harassing, threatening, and issuing libelous and/or false statements regarding Nicole Prause, Ph.D. Please furnish a narrative to include whether or not you face any civil and/or criminal charges concerning these matters, and provide the cause numbers, case status, and contact information.

9.      The complaint filed by Dr. Prause to the TMB is completely false.  Dr. Hilton never stalked, cyberstalked, harassed, or threatened Dr. Prause.  Moreover, he never intentionally made any false and/or libelous statements regarding Defendant Prause, although he did criticize her professional work as explained more fully below. Of course, the TMB has the authority to discipline Dr. Hilton and even suspend his medical license.  Thus, even thought the allegations were false and made in bad faith, they still had to be taken seriously.  To fight this false complaint, Dr. Hilton had to retain separate counsel who specializes in this type of defense, and he had to spend time, money and stress responding to the TMB.

---

[1] Remarkably, someone unknown to Dr. Hilton took a photo of that brief encounter between Dr. Hilton and Defendant Prause, and a copy of the photo is attached hereto as Exhibit "A".

10.     Additionally, in May, 2019, Dr. Hilton received notification of two additional complaints – this time from two journals who had published articles that Dr. Hilton authored/co-authored. One journal was the prestigious *Proceedings of the National Academy of Sciences* (PNAS), and the other was the peer-reviewed journal, *Surgical Neurology International*.  When communicating to the journals, Dr. Prause falsely claimed that Dr. Hilton falsified/exaggerated his credentials – specifically, that he had claimed to be on the faculty of UT Health when he allegedly was not.  A copy of the notice letter from PNAS is attached hereto and incorporated herein as Exhibit "C".  In response to her complaint of sexual harassment, UT had informed Defendant Prause that Dr. Hilton was not an employee of UT.  Rather, he was a volunteer adjunct professor.  Adjunct professors are on the faculty of every major medical institution, and they provide important and valuable instruction to the students.  Adjunct professors are very much a part of the faculty even if they are volunteers and are not employed by the particular university system to which they are affiliated. Defendant Prause, who was affiliated with UCLA before it decided not to renew her contract, knows what a clinical, adjunct professor is, but this did not deter her from making false statements to the professional journals accusing Dr. Hilton of falsifying his academic credentials.

11.     In response to these false accusations, Dr. Hilton had to go to UT Health administrators, who had to look for documentation about when Dr. Hilton was admitted to the faculty of UT Health.  All this was happening at the same time the school was deciding what to do with the sexual harassment complaint Defendant Prause had filed with UT against Dr. Hilton.  Eventually, the documentation was found, and it was sent to the journals.  A copy of such documentation is attached and incorporated herein as Exhibit "D".  This documentation shows that the accusations made against him to the journals were also false; Dr. Hilton was, in fact, affiliated with UT Health

and was a faculty member of that institution at the time the articles were published.  Indeed, he continues to be a faculty member at the present time.

12.     Plaintiff notes that Defendant Prause altered her false allegations to fit the particular institution in a way specifically calculated to do the most harm against Dr. Hilton.  For example, in the complaint filed with UT Health, she accused Dr. Hilton of "open sexual harassment".  In contrast, she accused Dr. Hilton of falsifying his credentials when she complained to the PNAS. Plaintiff alleges that she did this as a calculated effort to identify the accusation that would be most offensive to the particular organization, and then she made that accusation knowing that the accusations were not, in fact, true.

13.     Defendant Prause has also defamed Dr. Hilton in many internet posts, tweets and similar publications.  These are too numerous to identify and/or attach here.

14.     The real reason Defendant Prause lodged her false complaints and made her defamatory statements is because Dr. Hilton is an internationally recognized expert on the subject of how pornography adversely impacts the brain.  Dr. Hilton has published papers and chapters in prominent academic journals and textbooks demonstrating that pornography can lead to actual addiction, as that term has been defined in the scientific community.  He has lectured and testified before government, academic and religious organizations all over the world explaining the adverse public health consequences caused by pornography.

15.     In contrast, Defendant Prause is a vocal advocate in favor of pornography.  Although she currently is unaffiliated with any academic institution, she has published papers suggesting that pornography is a harmless activity that does not cause addiction.  She teaches that people who appear to be addicted to sex or pornography merely have a stronger sex drive than average people. In her papers and in other forums, Defendant Prause has critiqued/criticized Dr. Hilton's work.

Dr. Hilton has responded in the literature and in his lectures by challenging both the methodology and the conclusions of Defendant Prause's work. Thus, while there has been no personal interaction between Dr. Hilton and Defendant Prause other than the brief, public encounter in 2009, there has been an important debate between the two in the literature and in the lecture halls about the state of the science as it relates to pornography and its public health hazards.

16.     Over the past two decades, a vigorous academic debate has continued, and the concept of sexuality having an addictive potential has been advocated by many. For instance, the medical diagnostic classification instrument, the ICD-11, recently classified compulsive sexual behavior (CSB) as an impulse control disorder for the first time, and the American Society of Addiction Medicine (ASAM) has also recognized sexual addiction as a brain disease. Another mental health diagnostic instrument, the DSM-5, has classified gambling as a natural addiction, and many feel that given the similarities in the data between CSB and gambling, CSB, including compulsive pornography use, might be included as in impulse control disorder (as in the ICD-11) or even as a behavior addiction in the next edition. To date, 15 states have declared pornography a public health hazard by passing resolutions in at least one of their legislative chambers, with such a resolution having recently passed a Texas legislative committee.

17.     Unfortunately, Defendant Prause has responded to these developments by attempting to assassinate the character of the researchers and experts who teach and publish about the adverse effects of pornography. She has falsely accused more than 10 scholars or activists – filing written complaints with various medical boards, academic institutions and employers. With some of these complaints, Defendant Prause has falsely accused her critics of personally sexually harassing her, stalking her, committing Title IX violations and/or committing other forms of sexual misconduct towards her. She also made other false accusations against these individuals. In April of 2019,

she escalated her attacks against Dr. Hilton because, again, he is one of the leading experts on the adverse public health consequences caused by pornography.

18.     Defendant Prause is entitled to write whatever she wants about pornography and sexuality. It is all part of the marketplace of ideas.  However, Defendant Prause "crossed the line" when she attempted to silence Dr. Hilton by making serious and false accusations against Dr. Hilton and others in an effort to ruin their careers and defame their characters.  These false accusations need to stop, and Defendant Prause needs to be held accountable.  Thus, Dr. Hilton now files a defamation *per se* case against Defendant Prause.   Defendant Prause's actions constitute defamation "*per se*" for two reasons: (1) the false statements directly impugn Dr. Hilton's professional reputation and (2) the statements falsely accuse Dr. Hilton of dishonesty and of sexual misconduct.  Thus, damages are presumed in this case.  Plaintiff further alleges that, while he is an academic authority in his field, he is not a "public figure" as that term is used in the relevant jurisprudence.   Defendant Prause knew that the accusations she was making against Dr. Hilton were false, and she acted with actual malice in making them.  Thus, in addition to the damages sought, Dr. Hilton seeks a permanent injunction against Defendant Prause regarding any statement she has posted against him that the jury finds to be defamatory.  Plaintiff is not seeking a *prior* restraint on speech, but he is seeking an injunction as to defamatory speech that has already occurred.  Dr. Hilton also seeks damages for the injury to his personal and professional reputation as well as punitive damages from Defendant Prause for what she has already done to Dr. Hilton's reputation.

# VI.
## SPECIFIC FACTUAL ALLEGATIONS

**A.  Dr. Hilton Had a Stellar Reputation Before Defendant Prause Falsely Accused Him.**

19.     Dr. Donald L. Hilton, Jr. is an internationally recognized neurosurgeon who has worked in

San Antonio, Texas for the past 25 years.  Some of Dr. Hilton's professional accomplishments as

a brain and spine surgeon are summarized below:

1. Dr. Hilton was an excellent student, graduating with highest honors from Lamar University in 1983 and graduating from medical school at UTMB with honors in 1988.

2. From 1988 to 1994, Dr. Hilton was in training (internship, then residency). The entirety of that training was at the University of Tennessee, where he worked with Dr. Kevin Foley, a pioneer in minimally invasive spinal surgery.  During that time, Dr. Hilton performed a high volume of both cranial and spinal surgeries.  After finishing his training in Memphis and beginning his practice in San Antonio, he prototyped modifications of the original two dimensional optical minimally invasive systems by using the equipment and techniques typically used in brain surgery.  These minimally invasive techniques have significantly improved recovery times and patient outcomes in spinal surgery.

3. Dr. Hilton is careful to give Dr. Foley credit for inventing the first endoscopic system for minimally invasive spinal surgery (termed the MED).  However, it was primarily Dr. Hilton who transformed Dr. Foley's MED into a three dimensional visualization application, and he worked with Dr. Foley and others to develop the METRx (Medtronic) system for minimally invasive spinal surgery.  This system is still likely the most widely used system in the world for minimally invasive spinal surgery.

4. Dr. Hilton wrote the first manual on the use of the METRx system, along with Dr. Sylvain Palmer, and he taught many neurosurgeons at the annual American Association of Neurological Surgery (AANS) and the Congress of Neurosurgery (CNS) meetings for many years. Dr. Hilton authored a section one of the first academic book ever published in the field of minimally invasive spinal surgery in 2002 (*Outpatient Spinal Surgery*, editors Mick Perez Cruet and Richard Fessler, Quality Medical Publishing).  He also authored one of the first chapters on minimally invasive spinal surgery in a respected orthopedic academic textbook in 2003 (*Operative Arthroscopy*, John B. McGinty, editor, Lippincott Williams and Wilkins).  He has published many peer-reviewed papers, abstracts, and posters at national meetings about minimally invasive spinal surgery, and is considered to be a pioneer in this field.  He continues to speak and lecture on this subject throughout the country and in other nations.

5. Dr. Hilton is an adjunct associate professor in the department of neurosurgery at the University of Texas Medical School at San Antonio, where he is program director of the Methodist rotation for the residency training program.  He is also the director of the spine

fellowship at the medical school.  His directorship of the spine fellowship is a particularly important position and professional honor.  There is a regulatory board functioning under the auspices of the American Board of Neurosurgery called the Committee on Advanced Subspecialty Training, (CAST). When the department of neurosurgery at UT Health applied for a CAST-approved spinal fellowship, CAST approved the application with the specification at the time that Dr. Hilton serve as the head of the fellowship, even though it was understood that Dr. Hilton was not a full-time or paid UT employee.  This is an unusual arrangement, and it speaks to Dr. Hilton's national reputation in spinal surgery.

6.   Although Dr. Hilton has had a busy practice performing brain and spine surgeries for the past 25 years, he has never had to defend a medical malpractice suit– something that is rare for even the best of surgeons.  A copy of Dr. Hilton's CV, which further details his academic and professional accomplishments is attached hereto as Exhibit "E".

20.   Dr. Hilton has also become a recognized expert in the field of how human sexuality, including problematic pornography use, can become addictive, and why this should be considered a public health issue.  The following summarizes some of his accomplishments in this field:

1.   Dr. Hilton was a co-author of a paper published in the *Proceedings of the National Academy of Sciences (PNAS)* in 2011 demonstrating that the same brain mechanisms that drive a natural craving for salt also drive craving in drug addiction.  His understanding of the anatomy, physiology, and pathology of the human nervous system have helped him understand and teach the concept of natural addiction, or addiction to behaviors such as gambling, food, and sex.  He has published extensively in this field, including co-authoring a chapter in a prominent academic psychiatric textbook.  The book is titled *Neurobiology of Addiction* (2016), and is published by Oxford University Press.  Dr. Hilton co-authored the chapter titled "The Neurobiology of Behavioral Addiction: Evidence for Assessment, Diagnosis, and Response to Critics."  The book was endorsed by Dr. Mark Potenza at Yale University, a nationally recognized expert on addiction, who said, "The topics covered in this book include timely coverage of important areas (for example, the boundaries of addiction, with a chapter on sex addiction)."

2.   Dr. Hilton has published other peer-reviewed papers in journals on this subject, including Pornography Addiction: A Neuroscience Perspective, in the journal *Surgical Neurology International (*2011), Pornography Addiction: A Supranomal Stimulus Considered in the Context of Neuroplasticity, in the journal *Socioaffective Neuroscience and Psychology* (2013), High Desire, or Merely an Addiction?, also in that same journal (2014), and Sex Addiction as a Disease: Evidence for Assessment, Diagnosis, and Response to Critics, in the journal *Sexual Addiction and Compulsivity* (2015).

3.   Dr. Hilton has spoken in numerous professional therapy conferences and symposiums, including at the Society for the Advancement of Sexual Health (SASH) in 2012, the International Institute for Trauma and Addiction Professionals (IITAP) in 2013.  He spoke at a symposium sponsored by the Minnesota Department of Public Health in 2014 on

developing a public health approach to pornography, and at the Sex and Love Addiction Symposium at the invitation of Dr. Patrick Carnes in 2014.  In 2015, he spoke in the Polish Parliament Building in Warsaw on a public health approach to pornography at a national symposium, and in 2015 gave another talk on a public health perspective on pornography at a Congressional Symposium in the US Senate Building sponsored by Senator Grassley.  He has also spoken on this subject at multiple universities, including Harvard, Princeton, the University of Virginia, Holy Cross, Brigham Young University, Utah Valley University, and Gonzaga University.

4.   In 2017 Dr. Hilton was invited to an academic conference sponsored by the Gregorian Pontifical University at the Vatican titled Child Dignity in the Digital World/ World Conference.  His talk was titled Pornography and the Developing Brain: Protecting the Children.  The conference concluded with a private audience with Pope Francis.  A copy of a photograph of Dr. Hilton meeting the Pope is attached hereto as Exhibit "F".

5.   Dr. Hilton has been featured in numerous documentaries and podcasts on the neuroscience of pornography addiction and on the public health aspects of this problem.  Examples include:

   a.  The Porn Pandemic  https://www.youtube.com/watch?v=NJ1ExvcsyLk
   b.  Addicted to Porn: Chasing the Cardboard Butterfly.
       https://www.amazon.com/Addicted-Porn-Chasing-Cardboard-Butterfly/dp/B01LTIAB1E
   c.  Porn on the Brain.  Nationwide New Zealand broadcast
       https://www.youtube.com/watch?v=3iWY_Q3pqlI
   d.  W5:Generation XXX.  Nationwide Canadian broadcast
       http://www.ctvnews.ca/w5/freely-available-online-pornography-exposes-children-to-violent-abusive-sex-1.2590997

6.   Dr. Hilton currently serves on the board of the Washington DC-based National Center on Sexual Exploitation (NCOSE), and has served on the board of the Society for the Advancement of Sexual Health (SASH). He also wrote a book esoteric to his religious faith titled *He Restoreth My Soul* in 2009 on spiritual paradigms of healing from pornography addiction.

7.   For more than a decade, Dr. Hilton and his wife Jana have worked together as program coordinators of the addiction recovery program in the San Antonio and Austin areas for the Church of Jesus Christ of Latter-day Saints.  In this role, they help organize groups for individuals and couples struggling to recover from the effects of addictive behaviors and betrayal trauma, and they lead some of these groups themselves.  They find great joy in using all their knowledge and experience to personally mentor and help others recover from their addictions.

21.   Dr. Hilton has been married for 37 years to Jana Kunzler Hilton. He has dedicated his considerable gifts and talents towards relieving human suffering and advancing the body of

scientific knowledge in his two fields of expertise, and his stellar reputation reflects his commitment to these ideals.  Thus, it was a particularly egregious act for Defendant Prause to attempt to destroy Dr. Hilton's well-earned reputation.

**B.  Defendant Prause Defamed Dr. Hilton.**

22.     Defendant Prause has made several false and defamatory statements about Dr. Hilton over the years on social media and in other Internet forums.  However, she went after Dr. Hilton's livelihood and career when, in April 2019, she authored a series of written communications to the University of Texas making serious and false accusation of sexual harassment against Dr. Hilton.  Specifically, on April 16, 2019, Defendant Prause sent an email to the University of Texas Health Science Center at San Antonio, which included the following statements:

- "I am a neuroscientist with two university appointments being openly sexually harassed by your faculty member Dr. Donald Hilton."

- Dr. Hilton "publicly claims that I personally appear in pornographic films, attend the Adult Video Network awards, and molest children in my laboratory, because I trained at The Kinsey Institute."[2]

- "I have filed a complaint against Hilton's medical license for sexual harassment.[3] However, he clearly uses his UT affiliation to promote his sexual harassment. As a female scientist, he is uniquely attacking my gender with these false claims about my sexuality."

- "Please direct my sexual harassment complaint against Donald Hilton to the appropriate officer for investigation."

---

[2] Dr. Hilton has never claimed that Defendant Prause personally appeared in any pornographic film or that she molested children in her laboratory.  Defendant Prause did, in fact, suggest that she attend the Adult Video Network awards ceremony as evidenced by her own public statements that she placed on her social media accounts, and Dr. Hilton has pointed this out when discussing the issue of bias in some of his lectures.  Complete, accurate and unaltered screenshots of Defendant Prause's posts on her social media describing her connection to the Adult Video Network awards are attached as Exhibit "G".

[3] Defendant Prause did file a complaint against Dr. Hilton with the Texas Board of Medical Examiners accusing him of harassing her.  As her April 16, 2019 makes clear, she was referring to sexual harassment when she complained that Dr. Hilton was guilty of "harassment" with respect to Defendant Prause.

23.     Defendant Prause authored and sent other emails to the University of Texas Health Science Center at San Antonio including the following:

- "Would you please confirm that this sexual harassment complaint is being directed to the appropriate office for investigation?" (April 17, 2019).

- "Would you confirm that this sexual harassment will be or is being investigated? I will need to start escalating to others if these inquiries are unresponsive." (April 19, 2019).

- "Hilton has been defaming and libeling me using misogyny for years, while claiming to be representing the views of UTSA. I want the sexual harassment and the libel to stop, and the false information (that I molest children in my lab and perform in pornography) publicly corrected." (April 29, 2019).

- "If you are giving these titles to people, and they use them to defame and sexually harass scientists, it seems their title should be rescinded. Here are a few of the many places he has claimed to be an 'adjunct' at your institution. If these are incorrect, please let me know and I will address his false credentials with his licensing board." (April 30, 2019).

24.     A complete, accurate and un-redacted copy of all known written communications from Defendant Prause to the University of Texas Health Science Center at San Antonio is attached hereto and incorporated herein as Exhibit "H".

25.     As alleged above, Defendant Prause also made false allegations about Dr. Hilton to the TMB and to two journals – PNAS and Surgical Neurology International. The accusations made in these written communications are completely false, and Defendant Prause knew perfectly well that they were false when she made them.  As alleged above, these accusations were made with actual malice and are defamatory as alleged more fully herein.[4]

**C.  Defendant Prause Has a Pattern of Falsely Accusing Academicians and Activists Who Disagree With Her.**

26.     Unfortunately, Dr. Hilton is not the only victim of Defendant Prause's effort to silence her critics by falsely accusing them.  The following is a partial summary of such activity. All of these

---

[4] Based on information and belief, Dr. Hilton alleges that Defendant Prause also sent at least one of these personal communications to a certain individual(s) within the UT organization who were not in the chain of authority.  Dr. Hilton understands and alleges herein that these communications were also defamatory.

witnesses have provided affidavits and are willing to testify as to the unprofessional and defamatory behavior of Defendant Prause.

1. **John Adler, MD**.  Dr. Adler is a Harvard-trained neurosurgeon who is the editor of the peer-reviewed journal *Cureus*.  He is the Dorothy and Thye King emeritus professor of neurosurgery at Stanford University. Defendant Prause did not agree with a paper his journal published, so she made an allegation of "stalking" against Dr. Adler and filed a Title IX violation against him with Stanford University.  This claim was found to be false.  Defendant Prause's false allegations against Dr. Alder are detailed more fully in his affidavit, which is attached hereto and fully incorporated herein as Exhibit "I".

2. **Gary Wilson**.  Mr. Wilson manages a web page called Your Brain on Porn, has written a book by the same name, and has given a TED talk on this subject.  Defendant Prause has relentlessly attacked Mr. Wilson with numerous false accusations.  For instance, she has claimed that Mr. Wilson physically stalked her in Los Angeles when, in fact, he has not even been in Los Angeles for years. She also reported him to the Oregon Counseling Board, which complaint was ultimately dismissed because it was meritless. She filed a police report in which she told the police that she saw Mr. Wilson "wearing a sleeping bag and armed with a long sleeved sweater." All these allegations are false. Defendant Prause also claims that she reported Mr. Wilson to the police for stalking her, threatening her lab and mapping a route to her lab.  Defendant Prause has publicly stated that she filed two FBI reports on Mr. Wilson.  All these allegations are false. Defendant Prause's false allegations against Mr. Wilson are detailed more fully in his affidavit, which is attached hereto and fully incorporated herein as Exhibit "J".

3. **Alexander Rhodes**. Mr. Rhodes founded an online community of over 200,000 individuals trying to quit using pornography.  Defendant Prause stated that she had filed a complaint against Mr. Rhodes with the FBI and claimed that he was being investigated by that agency.  We do not have confirmation that she actually made a complaint to the FBI or that the agency ever conducted any investigation.  However, the mere statement in writing wherein Defendant Prause claimed that she reported him to the FBI and that the FBI was investigating him is an intimidating false statement designed to silence Mr. Rhodes.  Defendant Prause's false allegations against Mr. Rhodes are detailed more fully in his affidavit, which is attached hereto and fully incorporated herein as Exhibit "K".

4. **Staci Sprout, LCSW**.  Staci Sprout is a therapist in Washington State.  Defendant Prause reported Ms. Sprout to the state licensure agency, falsely accusing her of engaging in conspiracy theories.  This was after falsely accusing her on Facebook of practicing without a license. Defendant Prause did this because Ms. Sprout supports an addictive model for problematic sexuality and pornography use.  Defendant Prause's false allegations against Ms. Sprout are detailed more fully in her affidavit, which is attached hereto and fully incorporated herein as Exhibit "L".

5. **Linda Hatch, PhD**.  Defendant Prause falsely reported Dr. Hatch to the California Psychology Board because Dr. Hatch supports an addictive model for problematic pornography use. Dr. hatch had to defend herself to the Board and go through an extensive process. She was exonerated.  Defendant Prause's false allegations against Dr. Hatch are detailed more fully in her affidavit, which is attached hereto and fully incorporated herein as Exhibit "M".

6. **Bradley Green, PhD**.  Defendant Prause falsely reported Dr. Green to the University of Southern Mississippi, his academic institution, because Dr. Green supports an addictive model for problematic pornography use. She accused him of unethical behavior and of lying, and reported the paper he wrote with Dr. Stefanie Carnes to the publisher Taylor and Francis, which initiated a lengthy review. In May 2019, Dr. Green was formally and completely cleared of falsification of data, thus establishing Dr. Prause's attack as another false accusation against a professional. Defendant Prause's false allegations against Dr. Green are detailed more fully in his affidavit, which is attached hereto and fully incorporated herein as Exhibit "N".

7. **Stefanie Carnes, PhD.**   Dr. Carnes was a co-author with Dr. Green on the above-referenced paper. In addition, Defendant Prause defamed and smeared the organization headed by Dr. Carnes, the International Institute for Trauma and Addiction Professionals, (IITAP) of profiting from treating people seeking help from compulsive, addictive, and or out of control sexual behavior. Defendant Prause has accused IITAP of profiting from helping people overcome sexual addiction, a problem Defendant Prause says doesn't exist. Defendant Prause's false allegations against Dr. Carnes are detailed more fully in her affidavit, which is attached hereto and fully incorporated herein as Exhibit "O".

8. **Geoff Goodman**, **PhD**.  Defendant Prause falsely reported him to his institution (Long Island University) because he supports an addictive model for problematic pornography use. He underwent an extensive and embarrassing process in clearing his name from what were ultimately found to be false allegations. Defendant Prause's false allegations against Dr. Goodman are detailed more fully in his affidavit, which is attached hereto and fully incorporated herein as Exhibit "P".

9. **Exodus Cry**.  This is an abolition group fighting prostitution.  Defendant Prause falsely reported this organization to the Missouri Attorney General for allegedly having a fraudulent 501(c)(3) (non-profit) mission statement. Their attorneys had to defend Exodus Cry and go through a lengthy process, and they were ultimately exonerated. Defendant Prause's false allegations against Exodus Cry are detailed more fully in the affidavit of Laila Mickelwait, which is attached hereto and fully incorporated herein as Exhibit "Q".

27.   As these examples demonstrate, Defendant Prause's *modus operandi* is to falsely accuse

people with whom she disagrees in an effort to disparage, discredit and silence her critics. Dr.

Hilton is the third professional she has accused of sexual harassment/Title IX violations in the workplace. It is a ruthless and dishonest thing to do, and it is totally inconsistent with the principles of peer-review and free academic discussion.  Of course, it harms the people who are falsely accused.  Additionally, these types of false and unfounded complaints also have a chilling effect on women who have actually been abused, assaulted, stalked or harassed.

**VII.**
**CAUSE OF ACTION-Defamation *Per Se.***

28.    Dr. Hilton alleges a defamation *per se* cause of action against Defendant Prause and incorporates paragraphs 1 through 27 of this Petition into this cause of action.  The elements of a defamation action include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the Plaintiff, (3) with the requisite degree of fault, and (4) damages. Because the false statements made by Defendant Prause constitute defamation *per se*, Dr. Hilton must prove the first three elements, but not the fourth element, as he is entitled to recover general damages without proof of any specific loss. This is because, as defamation *per se*, Defendant Prause's false statements are so obviously harmful that damages, such as mental anguish and loss of reputation, are presumed.  Plaintiff will specifically address each element of the case of action:

1.    Defendant Prause published a false statement of fact to a third party.

29.    In this case, the emails sent and statements made by Defendant Prause constitute a clear "publication."  Moreover, the statements Prause made to UT and to the TMB allege that Dr. Hilton "sexually harassed" "stalked" "harassed" Defendant Prause, and her accusations to PNAS and to Surgical Neurology that he falsified his credentials to key journals and publications all qualify as "publications" of defamatory statements.  Thus, these accusations involve alleged facts (not opinions or conjecture).  Furthermore, the allegations are completely and totally false as explained more fully above.  Finally, the fact that the emails were intentionally sent to the University of

Texas, TMB and journals satisfies the requirement that the defamatory statements be published to a third party.

       2.  <u>Defendant Prause's statements were defamatory concerning Dr. Hilton.</u>

30.    The false accusations made by Defendant Prause are, and were intended to be defamatory. Defendant Prause has accused Dr. Hilton of sexually harassing her, which suggests that he engaged in unwanted sexual behavior towards someone other than his wife.  For Dr. Hilton, it is difficult to imagine a more defamatory (and false) statement she could have made against him. Additionally, allegations that he stalked Defendant Prause and that he was dishonest with respect to his credentials are clearly defamatory.

       3.  <u>Defendant Prause made the defamatory statements with the requisite degree of fault.</u>

31.    Because Dr. Hilton is not a public figure, he need only prove that Defendant Prause acted negligently with respect to the truth or falsity of the allegations she made against him.  Dr. Hilton easily satisfies that standard.  In fact, Defendant Prause acted with actual malice in making these false and defamatory statements.  She has perfect knowledge that Dr. Hilton did not commit the misconduct she alleged.  After all, since the stalking and sexual harassment was supposedly committed against her, she obviously knows that it never happened.   Additionally, as alleged above, she knew that an adjunct professor is part of the faculty even if they are not employed, but she accused him of falsifying his credentials anyway.

       4.  <u>Defendant Prause's defamatory statements have caused harm to Dr. Hilton.</u>

32.    Again, general damages are presumed because the false statements constitute defamation *per se*.  Moreover, Dr. Hilton alleges that the defamation has cost him money, worry, mental anguish and time and stress.  People talk, and even when he is ultimately exonerated by the various institutions involved, he worries that some people may still wonder about him.  This is particularly

troubling for him as he teaches about sexual addiction and helps people recover from their own addictions.  If people think Dr. Hilton might possibly be a sexual harasser, a stalker or a cyberstalker, then his ability to speak authoritatively on the subject of sexual addiction or help people overcome their addictions becomes severely diminished.  Likewise, if people wonder whether he has falsified his credentials, then it will compromise his integrity and his ability to do good in this community and in the world.  Defendant Prause knows this, which is why she made the false accusations.

**VIII.**
**CAUSE OF ACTION –PERMANENT INJUNCTION**

33.     Plaintiff seeks a permanent injunction so that Defendant Prause will be required to remove defamatory statements from the Internet.

**IX.**
**PUNITIVE OR EXEMPLARY DAMAGES**

34.     Defendants acted with actual malice in making the false and defamatory statements against Dr. Hilton.  Stated another way, Defendants intentionally wanted to destroy Dr. Hilton's career and credibility, so they intentionally made false accusations to silence him and/or diminish his ability to speak authoritatively about the harmful effects of pornography.  Thus, Defendants are liable for punitive damages in an amount that the jury shall determine to be proper.

**X.**
**DIRECT AND VICARIOUS LIABILITY.**

35.     Defendant Prause is a vice principal of Defendant Liberos and, at all the relevant times, she was acting within the scope and course of her agency with Liberos when she defamed Dr. Hilton.  Thus, Defendant Liberos is both directly liable and vicariously liable for Defendant Prause's actions and is liable for actual and punitive damages arising out of Defendant Prause's malicious and defamatory actions.

## XI.
## JURY DEMAND

36.    Plaintiff demands a jury trial and previously tendered the appropriate fee.

## XII.
## PRAYER

37.    Plaintiff prays that he have judgment against both Defendants for actual damages shown

and proved at trial, for punitive damages, for prejudgment and post-judgment interest, for costs of

court, for permanent injunction and for all other relief, legal and equitable, to which he is entitled.


Respectfully submitted,

THE PACKARD LAW FIRM

By: _____
Daniel W. Packard
State Bar No. 00791392
Email: dan@packardfirm.com
Samuel W. Packard
State Bar No. 24043857
Email: samuel@packardfirm.com
1100 NW Loop 410, Suite 104
San Antonio, Texas 78213
Telephone Number: (210) 340-8877
Fax Number: (210) 340-8787

Attorneys for Plaintiff


**[CERTIFICATE OF SERVICE ON NEXT PAGE]**

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that a true and correct copy of this instrument has been forwarded, in accordance with the Federal Rules of Civil Procedure on the 24th day of July, 2019 to:

Claire W. Parsons                                                    Via Email and CM/ECF
Wilson Elser Moskowitz Edelman & Dicker LLP
909 Fannin Street, Suite 3300
Houston, Texas 77010


                                        _____
                                        Daniel W. Packard