**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **DONALD L. HILTON JR.** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Case No. 5:19-CV-00755-OLG** |
| | § | |
| **NICOLE PRAUSE AND LIBEROS LLC** | § | |
| | § | |
| **Defendants.** | § | |

---

**DEFENDANTS' MOTION TO STAY RULING PENDING SUPPLEMENTAL
BRIEFING AND DECISION BY FIFTH CIRCUIT COURT OF APPEALS,
OBJECTIONS AND REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS PURSUANT TO THE TEXAS ANTI-SLAPP STATUTE**

---

COMES NOW, Defendants Nicole Prause and Liberos, LLC (collectively herewith "Dr. Prause" or "Defendants") and filed this Motion to Stay Ruling Pending Supplement Briefing or Decision by the Fifth Circuit Court of Appeals, Objections and Reply to Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Claims and Causes of action pursuant to the Texas Anti-SLAPP statute, Texas Civil Practice & Remedies Code Section 27.001 *et seq.*:

**I
SUMMARY OF REPLY**

Plaintiff Donald L. Hilton, Jr. ("Hilton" or "Plaintiff") has sued Defendants for defamation after Dr. Prause reported his campaign of harassment against Dr. Prause based on his personal dislike for the subject matter of her academic research. Specifically, Dr. Prause made a complaint with the University of Texas Health Science Center – San Antonio ('UT Health – SA') after learning that Dr. Hilton had repeatedly and falsely claimed that she appeared at the adult video awards, implied that she appeared in pornography by attending such awards, and accused her of sexually abusing children based on her affiliation with the Kinsey Institute. In retaliation, Hilton

1

sued Dr. Prause for defamation based on this exercise of Dr. Prause's right to free speech and petition. Defendants have filed a motion to dismiss Hilton's suit pursuant to the Texas Anti-SLAPP statute, which provides a substantive mechanism for early dismissal of frivolous lawsuits that infringe on a party's right to free speech, right to petition, and right of association.

Shortly before Defendants' Anti-SLAPP motion was due, Hilton moved for leave to amend his pleadings to assert new claims of defamation based on substantially different facts. Before Defendants had an opportunity to file a response in opposition to the motion for leave, the Court granted Plaintiff's motion for leave to amend. In responding to Defendants' motion to dismiss, Plaintiff now argues that the motion to dismiss should be denied because it did not address claims in the proposed petition, even though leave had not been granted for the amendment at the time that Defendants' motion to dismiss was filed. Because Plaintiff has brought new claims against Dr. Prause, the Anti-SLAPP statute allows her sixty (60) days to prepare briefing explaining why these new claims should also be dismissed under the statute. Thus, dismissal of these new claims is premature, and Defendants are entitled to sixty days from the date of the amended filing to submit supplemental briefing on the newly added claims. Additionally, Defendants assert that the Court's ruling on Defendants' motion to dismiss should be stayed pending the Fifth Circuit Court of Appeals' ruling on two pending appeals, which directly address whether the Texas Anti-SLAPP statute is a substantive rule that must be enforced in the federal courts.

Defendants will further show that their motion to dismiss should be granted because: (1) the Anti-SLAPP statute is a substantive law, rather than a procedural rule, that should be applied in the federal courts; (2) Hilton has failed to establish by clear and specific evidence a prima facie case for each essential element of his defamation action; and (3) Defendants have conclusively proved affirmative defenses in response to Hilton's defamation claims.

2

## II
## MOTION TO STAY PROCEEDINGS TO ALLOW FOR SUPPLEMENTAL BRIEFING AND/OR PENDING RULING BY COURT OF APPEALS

Because the Court has allowed Plaintiff to file amended pleadings that substantially change the factual background and nature of his defamation claims against the Defendants, Defendants are entitled to an additional sixty (60) days to file supplemental briefing showing why Plaintiff's new allegations are also subject to dismissal under the Texas Anti-SLAPP statute.  TEX. CIV. PRAC. & REM. CODE § 27.003(b). Defendant hereby objects to the dismissal of these newly asserted claims on the grounds that they are premature, and seek a sixty days from the date that such claims were filed to provide supplemental briefing on their motion to dismiss.  *See* Doc. No. 6, incorporated by reference.

Additionally, Defendants hereby move to stay the proceeding until the Fifth Circuit has ruled on the pending cases *Klocke v. Watson*, No. 17-11320 (orally argued Sept. 5, 2018) and *Van Dyke v. Retzlaff*, No. 18-40710.  These cases present the issue of whether Texas' Anti-SLAPP law is a substantive law that should be enforced in the federal courts.[1] Hon. Lee Rosenthal, the Chief Judge for the Southern District of Texas, has stayed a similar cases turning on the enforceability of the Anti-SLAPP statute in federal court pending the Fifth Circuit's decision in *Klocke v. Watson*. *See* No. 4:18-CV-03946, *Compass Bank v. Keller*, Doc. No. 35, entered July 16, 2019.

## III
## OBJECTIONS TO EVIDENCE ATTACHED TO PLAINTIFF'S RESPONSE

Defendants hereby object to the evidence attached to Plaintiff's response to Defendants' motion to dismiss, on the following grounds:

- Defendants object to Document Nos. 9-2 through 9-9 of Plaintiff's response on the grounds that they are irrelevant to Plaintiff's claims.  In responding to Defendants' motion, Hilton attaches the affidavits of seven individuals who claim that Dr. Prause unfairly reported

---

[1] Copies of the Appellant's Brief, Reply and Letter Supplement in *Van Dyke v. Retzlaff* are attached hereto as Exhibits A, B, and C for the Court's review, and are hereby incorporated herein by reference.

3

them for harassment based on their online postings and other activities. *See* Doc. Nos. 9-2 to 9-9. However, Defendants object to these exhibits on the grounds that they are totally irrelevant to Defendants' motion or Plaintiff's response, in that they do not provide any evidence for the key issues of whether Dr. Prause appears in pornography and/or attends the Adult Video Awards, whether Hilton accused her of sexually abusing children, or whether Hilton harassed Dr. Prause.

- Defendants further objects that Document Nos. 9-2 through 9-9 are inadmissible for the purpose of establishing that Dr. Prause made false reports of harassment against Dr. Hilton in this case. Under FED. R. EVID. 404, evidence of a person's character is not admissible to prove that on a particular occasion, the person acted in accordance with the character or trait. FED. R. EVID. 404(a). Also, evidence of a crime, wrong or other at is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character. *Id.* at 404(b). Accordingly, Defendants' object to Document Nos. 9-2 through 9-9, and request that the Court exclude them from consideration when ruling on Defendants' motion to dismiss.

- Defendants object to Paragraph 19 of Hilton's affidavit in support of his response (Document No. 9-1) on the grounds that he has asserted matters that are not within his personal knowledge. A sworn statements in opposition to a motion must be based on personal knowledge. *See, e.g.,* FED. R. CIV. P. 56(e). In Paragraph 19, Hilton claims that Dr. Prause has falsely accused other individuals of harassment or wrongdoing, but has not demonstrated that he has any personal knowledge of the facts and circumstances of these other incidents. Thus, Defendants object to Paragraph 19 and ask that it be excluded when ruling on Defendants' motion. Defendant further objects to this paragraph contains legal arguments rather that assertions of fact. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

- Defendants object to certain statements in Hilton's affidavit on the grounds that he is incompetent to provide such testimony. An affiant is not competent to provide testimony if the basis of the testimony is speculation, intuition, or rumors about matter remote from that person. *See, e.g., Visser v. Packer Eng'g Assoc.*, 924 F.2d 665, 669 (7th Cir. 1991). Hilton is not competent to testify that "the real reason Prause lodged her false complaints…is because I'm on expert on the subject of how pornography adversely impacts the brain." *See* Doc. No. 9-1, p. 7-8, ¶16.

- Defendants object to certain statements in Hilton's affidavit on the grounds that they are argumentative statements that are not proper fact or opinion testimony. *Thomas v. Atmos Energy Corp.*, 223 Fed. Appx. 369, 374 (5th Cir. 2007). If Hilton intends to provide expert testimony in his affidavit, he must first establish himself as an expert, which he has failed to do. Even if he is deemed an expert, he has not provided sufficient facts to support his opinions as required by FED. R. EVID. 702. Defendants therefore object to the following argumentative and conclusory statements in his affidavit: "Nicole Prause is a vocal advocate in favor of pornography" (Doc. 9-1, ¶3); "Prause has published papers suggesting that pornography is a harmless activity that does not cause addiction" (Doc. 9-1, ¶3); "I believe that the people associated with the Kinsey Institute should disavow Dr. Kinsey's

4

collaboration with pedophiles" (Doc. 9-1, ¶3); "I believe that all concerned citizens – regardless of how they feel about whether pornography is addictive – should be repulsed by Table 34 and the abuse that lead to its creation" (Doc. 9-1, ¶5); "VSS… [is] a term designed to avoid the stigmatizing term pornography" (Doc. 9-1, ¶7); Dr. Prause has a "cozy relationship with the pornography industry" and has "ideological and cultural ties to the pornography industry" (Doc. 9-1, ¶8); and "Prause has consistently taken the position of the pornography industry, whether it relates to need for condoms in the porn industry or whether pornography is addictive." (Doc. 9-1, ¶9).

# IV
## REPLY TO RESPONSE TO MOTION TO DISMISS

Defendants would show that Plaintiff has failed to rebut the arguments and evidence set forth in Defendants' motion to dismiss, and therefore Plaintiff's defamation claims related to Dr. Prause's report to UT Health-SA should be dismissed as a matter of law

### A.  The Texas Anti-SLAPP Statute is Substantive and Applies in Federal Court

Hilton argues that this Court should deny Dr. Prause's motion to dismiss because the Anti-SLAPP statute is a procedural vehicle, and thus cannot be enforced in federal court.  However, the "procedural features [of the Anti-SLAPP statute] are designed to prevent substantive consequences—the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit."  *Williams v. Cordillera*, 2014 WL 2611746 at *1-2 (S.D.Tex. 2014); *Cuba v. Pylant*, 814 F.3d 701, 706, n.6 (5th Cir. 2016).  While the Fifth Circuit has not yet decided whether the Texas Anti-SLAPP statute is enforceable in federal court, it has held a similar Louisiana statute applies in federal court.  *Henry v. Lake Charles American Press, LLC*, 566 F.3d 164, 168-69 (5th Cir. 2009).  The Fifth Circuit has also assumed, without deciding, that the Texas Anti-SLAPP statute applies in federal court.  *Diamond Consortium, Inc. v. Hammervold, P.L.C.*, 733 Fed. Appx. 151, 154 (5th Cir. 2018); *Cuba*, 814 F.3d at 706, n.6; *Pseudonym v. East Houston*, 2018 WL 2392200 at *3 (S.D.Tex. 2018).

As Hilton acknowledges, the applicability of the Anti-SLAPP statute in this Court turns on an *Erie* analysis, which holds that a federal court sitting in diversity must apply state substantive law and federal procedural law. *Erie R. R. Co. v. Tomkins*, 304 U.S. 64, 78 (1939). The First, Second and Ninth Circuits have founds that anti-SLAPP statutes apply in federal court as state substantive policy. *See Godin v. Schencks*, 629 F.3d 79, 88-92 (1st Cir. 2010); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 148 (2d Cir. 2013); *U.S. ex rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999). Currently, there are two cases pending in the Fifth Circuit Court of Appeals on the issue of whether the Texas Anti-SLAPP statute is substantive and therefore enforceable in the federal courts. *See Klocke v. Watson*, No. 17-11320 (orally argued Sept. 5, 2018) and *Van Dyke v. Retzlaff*, No. 18-40710.

Hilton cites federal district court cases in the Western District of Texas as authority for the position that the Anti-SLAPP statute is procedural, rather than substantive, and therefore cannot be applied in federal court. *See* Doc. No. 9, p. 5, citing *N.P.U., Inc. v. Wilson Audio Specialties, Inc.*, 343 F.Supp.3d 661 (W.D. Oct. 29, 2018); *Rudkin v. Roger Beasley Imports, Inc.*, No. A-17-CV-849-LY, 2018 WL 2122561 (W.D. Tex. Dec. 28, 2017). In both cases, the district court followed Judge Graves' dissent in *Cuba v. Pylant*, in which he reasoned that the Anti-SLAPP statute was merely procedural, and that it conflicts with Rule 12 and 56 of the Federal Rules of Civil Procedure. *N.P.U., Inc.,* 343 F.Supp.3d a *5-6; *Rudkin*, 2018 WL 2122561 at *6.

However, there is no conflict between the Federal Rules of Civil Procedure and the Anti-SLAPP statute. "While the TCPA provides a procedural mechanism for early dismissal, it ultimately provides a basis for dismissal that is inextricably tied to the substantive nature of Plaintiff's claims […] [The TCPA] is functionally substantive and does not conflict with the Federal Rules of Civil Procedure by simply providing a basis for dismissal of certain claims."

*Allen v. Heath*, 2016 WL 7971294 at *3 (E.D.Tex. 2016) *report and recomm. adopted*, 2016 WL 3033561 (E.D.Tex., 2016); *see also Banik v. Tamez,* 2017 WL 1228498 at *3 (S.D.Tex. 2017).

A review under Rule 12(b)(6) is fundamentally different than an Anti-SLAPP analysis. Under Rule 12(b)(6), the court limits its review to the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). A court ruling on an Anti-SLAPP motion reviews not only the pleadings, but also all affidavits filed in support. *Cuba*, 814 F.3d at 711 (quoting TEX. CIV. PRAC. & REM. CODE §27.006(a)). A party may also seek limited discovery relevant to the motion, TEX. CIV. PRAC. & REM. CODE §27.006(b). Neither is the Anti-SLAPP "at war" with Rule 56. While complementary, the Anti-SLAPP mechanism is simply different than Rule 56. *Cuba,* 814 F.3d at 711. While Rule 56 is broader than an anti-SLAPP statute, both require a party to make an evidentiary showing to demonstrate a claim is viable; anti-SLAPP statutes are simply targeted to a narrower set of claims implicating the First Amendment. Applying the Louisiana SLAPP statute, the Fifth Circuit held a non-movant's burden under is similar to that under Rule 56. *See Lozovyy v. Kurtz*, 813 F.3d 576, 585 (5th Cir. 2015); *Henry*, 813 F.3d at 175.

Additionally, there have been significant developments in case law effecting the Court's Erie analysis since the *N.P.U., Inc*. and *Rudkin* cases cited by Hilton. First, a federal district court in California has recently applied the Texas Anti-SLAPP statute to dismiss Stormy Daniels's defamation claims against President Trump. *Clifford v. Trump*, 2018 WL 4997419 at *5, *6-8 (C.D. Cal.2018). This case involves the defamation claims brought by Hilton against Dr. Prause, a California resident. While he could have sued Dr. Prause in California, where the Ninth Circuit has found that Anti-SLAPP statutes are substantive and therefore must be applied in federal courts, he instead chose to sue her in Texas courts. If this Court were to find that the Texas Anti-SLAPP is procedural and should not be applied to this case, this ruling would run afoul of the twin aims

7

of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws. *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 428 (1996).

Second, and more importantly, the Fifth Circuit has recently issued an opinion that precludes a federal court from interpreting a federal rule in a manner that strips a defendant of the right to assert an evidentiary defense provided by a Texas statute. *Coleman v. United States*, 912 F.3d 824, 831-32 (5th Cir. 2019). In *Coleman*, a plaintiff argued that TEX. CIV. PRAC. & REM. CODE §74.401, a Texas statute providing the standard for qualifications of medical experts, was purely procedural, and thus the expert's qualification must instead be governed by FED. R. CIV. P. 702. The Fifth Circuit found that the Texas statute must be enforced because although it was an evidentiary rule, it was so intertwined with the state substantive rule that the state law excluding evidence must be followed in order to give full effect to the state law. *Id*. at 832-33. Additionally, FED. R. CIV. P. 601 specifically provides that in civil suits, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision. *Id.*

The *Coleman* decision is applicable to whether this Court should find that the Texas Anti-SLAPP statute is at least partially substantive and thus should be applied in federal court. Under FED. R. CIV. P. 302, state law governs the effect of a presumption regarding a civil claim or defense for which state law supplies the rule of decision. FED. R. CIV. P. 302. The Fifth Circuit has acknowledged that the provisions of the Texas Anti-SLAPP introduce a "burden-shifting dynamic, discovery prevention, and mandatory attorney's fees." *Block v. Tanenhaus*, 815 F.3d 218, n.3 (5th Cir. 2016). The Anti-SLAPP statute clearly provides that a movant has an initial burden to show, by a preponderance of the evidence, that the claim against him is protected, and then shifts the burden to the respondent to provide, by clear and convincing evidence, a prima facie case for each element of his claim. TEX. CIV. PRAC. & REM. CODE §27.003. The advisory notes to Rule 302

explain that a state law must be applied if "the burden of proof question ha[s] to do with a substantive element of the claim or defense."  Comm. Notes, FED. R. CIV. P. 302.  Because the Anti-SLAPP statute imposes a rebuttable presumption and shifts the burden of proof to plaintiff to provide evidence of each claim of his cause of action, it must be applied to a plaintiff's claims under FED. R. CIV. P. 302.

*Coleman* mandates the same result under FED. R. CIV. P. 501, which holds that state law also governs privilege regarding a civil claim or defense for which state law supplies the rule of decision.  FED. R. CIV. P. 501.  The Texas legislature embedded within the Anti-SLAPP statute a provision expressing that the legislature considers the statute a "state law govern[ing] privilege regarding a claim or defense" because it expressly refers to the statute as governing privilege considerations.  TEX. CIV. PRAC. & REM. CODE §27.011.  "This chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available[.]"  *Id.*  The Texas Supreme Court considers First Amendment activities, including the right to form and discuss unpopular views, and the right to associate, as the basis for qualified privilege. *Ex Parte Lowe*, 887 S.W.2d 1, 2-3 (Tex.1994).  The express purpose of the Anti-SLAPP statute is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, [and] associate freely[.]"TEX. CIV. PRAC. & REM. CODE §27.002.  Because the Anti-SLAPP statute governs the application of qualified privileges safeguarded under the First Amendment, and because it is a "defense for which state law supplies the rules of decision," *Coleman's* holding squarely applies in this case.[2]

Accordingly, the Court may apply the Anti-SLAPP statute to this case, and dismiss Plaintiff's claims against Dr. Prause for the reasons stated in her motion to dismiss.

---

[2] The Fifth Circuit's recent ruling in Coleman has been noted as applicable to the pending appeal in *Van Dyke v. Retzlaff*, No. 18-40710.  *See* Exhibit 3, attached hereto.

**B. Hilton Fails to Bring Clear and Specific Evidence to Support All Elements of his Defamation Cause of Action**

To apply the Anti-SLAPP statute to Plaintiff's claims, the Court must first determine whether Defendants have shown, by a preponderance of the evidence, that Hilton's claims are based on, relate to, or respond to her rights of free speech and of association. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex.2015). In his response, Hilton has "agreed that if the TCPA does apply in federal court, Defendant Prause has triggered its provisions." *See* Doc. No. 6, p. 21. Thus, the burden now shifts to Hilton to establish by clear and specific evidence a prima facie case for each essential element of his defamation action. *In re Lipsky*, 460 S.W.3d at 590. He fails to bring such evidence.

1. Hilton is Limited Purpose Public Figure and Must Prove the Falsity of Defendants' Allegedly Defamatory Statements

Hilton has failed to bring clear and specific evidence for the falsity of Defendants' allegedly defamatory statements against him. He has the burden of proving this element of his defamation claims because he is a limited purpose public figure for the purposes of this lawsuit. *See Casso v. Brand*, 776 S.W.2d 551, 554 (Tex.1989) (holding that public officials and public figures must prove falsity of statement made by non-media defendant).

While not required for private figures suing non-media defendants over private matters, a public figure plaintiff is require to prove the falsity of a statement made by a non-media defendant when suing for defamation related to a matter of public concern. *Id*.; *Van Der Linden v. Khan*, 535 S.W.3d 179, 200 (Tex.App. – Fort Worth 2017, pet. denied) (holding that falsity was an element of a public figure's claim for defamation).

Public figures fall into two categories: (1) all-purpose, or general-purpose, public figures, and (2) limited-purpose public figures. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Limited-purpose public figures are only public figures for a limited range of issues

10

surrounding a particular public controversy. *Id.*  To determine whether an individual is a limited

purpose public figure, the Fifth Circuit has developed a three part test:

(1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;

(2) the plaintiff must have more than a trivial or tangential role in the controversy; and

(3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Trotter v. Jack Anderson Enters., Inc*., 818 F.2d 431, 433 (5th Cir. 1987).

Hilton's pleadings clearly show that the controversy at issue is public and people other than

the parties to this lawsuit are likely to feel the impact of resolution.  Hilton alleges that he is an

"internationally recognized expert on the subject of how pornography impacts the brain" who has

published papers in "prominent academic journals and textbooks demonstrating that pornography

can lead to actual addiction," and has "testified before government, academic and religious

organizations all over the world" on this topic.  *See* Doc. No. 1-1, ¶10, Doc. No. 8, ¶14.  He claims

that Dr. Prause has critiqued Hilton's work "[i]n her papers and other forums," and that Hilton has

responded in "literature and his lectures" as part of "an important debate between the two in the

literature and in the lecture halls about the state of the science as it relates to pornography and

public health hazards."   *See* Doc. No. 1-1, ¶11, Doc. No. 8, ¶15.

The matter in controversy here is the manner in which Hilton has "responded in the literature

and his lectures by challenging both the methodology and conclusions of Defendant Prause's

work."   *See* Doc. No. 1-1, ¶11, Doc. No. 8, ¶15.  Dr. Prause has provided video recordings and

other evidence to show that Hilton has engaged in a pattern of harassment and attempted to

disparage her work by making false claims about her affiliations and potential bias in multiple

public fora.  Specifically, he has attempted to discredit her work and the conclusions of her studies

by claiming, at public appearances, that she is "pro-pornography," appears at the Adult Video

Awards, was a "porn professional," "loves [pornography] too much" to comment on the scientific study of pornography," and is affiliated with an institution that allegedly sexually abused minors. *See* Doc. No. 6-1, ¶9. Dr. Prause has also shown that Hilton told a news reporter that Dr. Prause had attended the Adult Video Awards in an attempt to convince the reporter to publish a news article stating this. *Id*. It was this pattern of harassment that lead Dr. Prause to file a complaint with UT Health – SA regarding Hilton's conduct. *Id*.

Based on the foregoing, Dr. Prause and Hilton's own pleadings show that this controversy is public in that people are discussing it, and people other than the parties will feel the impact of its resolution. Dr. Prause has shown that she and a research assistant were both contacted by a news reporter regarding Hilton's claims that Dr. Prause attended the Adult Video Awards, so that they could provide comment before an article was published. Hilton admits that his criticisms of Dr. Prause are part of the public debate regarding whether pornography is addictive, and admits that this issue is one that involves a public health hazard. He further alleges that other researchers are impacted by Dr. Prause's allegedly false reports of harassment. While Defendants obviously deny these claims, it is clear that Hilton's criticisms will effect not just Hilton, but the other researchers who claim that her research is biased or not credible because of her allegedly false reports of harassment against them. Thus, Defendants have met the first prong of the Fifth Circuit's three part test for determining whether Hilton is a public figure for the purpose of his defamation claims. *Trotter*, 818 F.2d at 433.

Defendants can easily show that Hilton meets the second and third prongs of the limited purposed public figure test. First, it is clear that Hilton's role in this controversy is not trivial or tangential, as the grounds for Dr. Prause's complaint to UT Health – SA is the manner in which Hilton disparaged her and her research when commenting on the public health issue of whether

pornography is addictive, and interacting with members of the press on this topic.  For the same reasons, Hilton's participation in this public debate is clearly germane to his defamation claims against Dr. Prause.

Because Hilton is a therefore a limited purpose public figure, he is required to provide the falsity of Defendants' statements to UT Health – SA.

2.  <u>Hilton Fails to Prove that Dr. Prause's Statements Are False</u>

Defendants' motion to dismiss Hilton's claims should be granted because Hilton has failed to provide clear and specific evidence that Dr. Prause's statements to UT Health – SA were false. TEX. CIV. PRAC. & REM. CODE §27.005(c); *In re Lipsky*, 460 S.W.3d at 590.

First, the only claims that are ripe for the Court's review are those stated in Hilton's Original Petition and repeated in her Amended Complaint.  The deadline for Defendants to brief the substantially new factual allegations will not expire until sixty days after her First Amended Complaint was filed, and the Court had not granted Hilton leave to file the new pleadings at the time that Defendants' motion to dismiss was filed.  Thus, any dismissal of Hilton's claims related to Defendants' allegedly false statements to the Texas Medical Board or public medical journals are therefore premature.  The remaining statements for which Hilton brings defamation claims against the Defendants are the reports included in her emails to UT Health – SA, in which she informed them that Hilton was sexually harassing her by "publicly claim[ing] that [she] personally appear[s] in pornographic films, attend[s] the Adult Video Network awards, and molest[s] children in [her] laboratory, because [she] trained at the Kinsey Institute." *See* Doc. No. 8-8, p. 1.

Hilton has failed to provide clear and specific evidence that he never stated and implied that she appears in pornographic films.  In the affidavit in support of his response, he includes a brief footnote denying that he ever accused Dr. Prause of appearing in pornography. *See* Doc. No. 9-1,

13

p. 6, n. 1.  However, Hilton fails to address or deny the video evidence that he has appeared at professional conferences and publicly stated that Dr. Prause is a "porn professional," a "porn prof," and appears that the Adult Video Awards, an awards show for pornography performers.  *See* Exhibit 6-1, ¶9(g)-(h), 10. Without denying these statements, or explaining the circumstances in which he made them, Hilton has failed to provide "clear and specific evidence" that they are false.

Hilton has also failed to provide clear and specific evidence that he never claimed that Dr. Prause attended the Adult Video Awards.  Instead, he actively admits that he did this, repeatedly, in the affidavit in support of his response.  *See* Doc. No. 9-1, ¶9.  Although he cites Twitter comments by Dr. Prause as evidence that she indeed attended these awards, none of these Twitter comments actually state that Dr. Prause attended the awards show.  *Id*.  Unless Hilton was present at the Adult Video Awards himself, he lacks any personal knowledge of whether Dr. Prause attended the awards show.  Regardless, Hilton has failed to bring any clear and specific evidence that Dr. Prause made a false statement when she reported that Hilton was repeatedly claiming that she attended the Adult Video Awards.

Hilton also fails to provide clear and specific evidence that Dr. Prause made a false statement when she reported his repeated allegations that she sexually abuses children as part of her research based on her affiliation with the Kinsey Institute.  Dr. Prause has provided her own declaration providing sworn proof that Hilton accused her of this, as well as the declaration of a third party witness.  *See* Doc. Nos. 6-1, 6-10.  In the affidavit attached to his response, Hilton admits that he asked Dr. Prause if she "supported Dr. Kinsey's willingness to collaborate with pedophiles."  *See* Doc. No. 9-1, ¶4.  While he essentially admits that he has accused researchers at the Kinsey Institute of "collaborat[ing] with pedophiles," he claims that this is not equivalent accusing Dr. Prause of abusing children herself.  *Id*. at ¶5.  However, *Hilton* fails to address or deny his own

statements at the Northwest Coalition for Healthy Intimacy in 2014, in which he stated that Dr. Prause advocated for teenagers to use pornography, had trained at the Kinsey Institute, that the Kinsey Institute had collaborated with pedophiles to time their sexual abuse of children, and that "this is where modern sexology is being driven." *See* Doc. No. 6-1, ¶9(i), (j).  A reasonable listener could understand that Hilton was implying that Dr. Prause had personally been involved in the alleged abuse of children, by hearing her criticized by her affiliation with the Kinsey Institute, hearing that the Kinsey Institute allegedly abused children, and hearing that "this is where modern sexology is being driven."  *Outlet Co. v. International Sec. Grp.*, 693 S.W.2d 621, 626 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Houseman v. Publicaciones Paso Del Norte, S.A. de C.V.*, 242 S.W.3d 518, 525 (Tex.App.—El Paso 2007, no pet.) (it is not necessary that every listener understand the reference, as long as some reasonable listeners can understand it). Thus, Hilton has also failed to provide clear and specific evidence that his statements regarding Dr. Prause's affiliation with sexual abuse of minors at the Kinsey Institute is false.

It appears that the real crux of Hilton's outrage is Dr. Prause's characterization of his conduct as sexual harassment.  Hilton repeatedly argues that his conduct does not constitute sexual harassment because he has "never flirted with Prause, made any sexual advancement towards her, or committed any type of sexual misconduct towards her." *See* Doc. No. 9-1, ¶6.  However, sexual harassment is not limited to a *quid pro quo* situation, in which one party promises advancement or demotion if sexual advances are not accepted.  Sexual harassment can also include "other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or uninvited and is desirable or offensive..." *Marquez v. Voicestream Wireless Corp.*, 115 F. App'x 699, 501 (5th Cir. Nov. 24, 2004). Even if Hilton did not proposition her, Dr. Prause could reasonably believe that he had engaged in verbal conduct of an unwelcome and offensive sexual

nature when he repeatedly and publicly criticized her professional opinions by accusing her of being a "porn professional," loving pornography, appearing at pornography awards, and implying that she either appeared in pornography herself or sexually abused children as part of her research. Thus, Hilton's statement that he never propositioned Dr. Prause is not clear and specific evidence that he never subjected her to unwelcome sexual conduct.

For the foregoing reasons, Hilton has failed to provide clear and specific evidence that Dr. Prause's statements to UT Health – SA were false, an essential element of a defamation claim brought by a limited purpose public figure.  Because he has failed to meet this burden, Defendants' motion to dismiss his defamation claims should be granted.

3.   Hilton Fails to Bring Evidence of Actual Malice by Defendants

Because Hilton is a limited purposed public figure, he must prove that Defendants acted with actual malice in making their report of harassment to UT Health – SA.  *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Wang v. Tang*, 260 S.W.3d 149, 155 (Tex.App.—Houston [1st Dist.] 2008, pet. denied); *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 574 (Tex.App.—Austin 2007, pet. denied).[3] Hilton fails to meet this burden.

To show actual malice, Hilton must prove that Defendants published a defamatory falsehood with actual malice, that is, with "knowledge that it was false or with reckless disregard of whether it was false or not." *Id.*, *citing New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964).  Reckless disregard requires more than a departure from ordinary care, and mere negligence is not enough.

---

[3] Hilton asserts that he may not be required to present any evidence of fault, since he asserts a claim for defamation per se.  *See* Doc. No. 9, p. 14, n. 9.  However, this only applies to cases involving private claimants regarding issues of private concern. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 760-61 (1985).  Here, Defendants have shown that Hilton's defamation claims relate to a matter of public concern.  *See* Doc. No. 6, pp. 14-15; *see also Hammond v. Lovings*, No. 5:15-CV-00579-RP, 2016 U.S. Dist. LEXIS 187597 (W.D. Tex. May 25, 2016) (finding that report of sexual harassment against employee at government-affiliated medical center involved a matter of public concern).

16

*Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 171 (Tex.2003).   There must be evidence that Defendants entertained serious doubts about the statement or had a high degree of awareness of the probable falsity of the statement when it was made. *Id.*; *Bentley v. Bunton*, 94 S.W.3d 561, 590 (Tex.2002).

In his response, Hilton fails to cite any clear or specific evidence that Dr. Prause knew that she was making a false statement when she made a complaint that Hilton was harassing her by accusing her of attending pornography awards, appearing in pornography, and sexually abusing children as part of her research.  *See* Doc. No. 9, p. 14.  In fact, he does not address these allegations at all when addressing the required element of fault for his defamation claims.  *Id.*  Instead, he simply denies that he ever harassed Dr. Prause, and claims that she must have known this was false because he denies it.  *Id.*  This is no evidence that Dr. Prause "entertained serious doubts about her statements" or "had a high degree of probable falsity" of her statements to UT Health – SA.  While Hilton also cites the affidavits of other individuals who claim that Dr. Prause improperly reported them for harassment, none of these affidavits actually comment on Dr. Prause's reports to UT Health –SA, and thus do not provide any evidence that she acted with reckless disregard when making her complaint to UT Health – SA.  Moreover, these affidavits are not admissible for the purpose of showing that Dr. Prause must have acted within her character when reporting a harassment complaint against Hilton.  *See* FED. R. EVID. 404(a), (b).

Because he has failed to provide clear and specific evidence of the requisite degree of fault for his defamation claim, Defendants' motion to dismiss should be granted on these additional grounds.

**C. Defendants Have Proved Affirmative Defenses to Hilton's Defamation Action**

Even if the Court finds that Hilton has established the elements of his defamation case by clear and specific evidence, the Court may still grant Defendants' motion to dismiss because she has conclusively established, by a preponderance of the evidence, the defenses of substantial truth and a common law qualified privilege. TEX. CIV. PRAC. & REM. CODE §27.005(d).

1. Defendants' Report of Harassment to UT Health – SA Was True

Even if Hilton is not a limited purpose public figure, and does not have to prove that Defendants' statements about him to UT Health – SA were false, Defendants are still entitled to dismissal because they can show, but a preponderance of the evidence, that the statements made to UT Health – SA were substantially true. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.1995) (substantial truth is a defense to a defamation claim). Substantial truth is evaluated by looking the gist of the publication. *Hearst Newspaper Prtship. v. Macias*, 283 S.W.3d 8, 11 (Tex.App.—San Antonio 2009, no pet.). Under the substantial truth test, a statement is not considered false unless it would have a different effect on the mind of the average listener than a true statement would. *Id.*

As shown by the motion to dismiss and exhibits attached thereto, Defendants have shown that Hilton has harassed her over the past ten years by alleging that she was involved in the sexual abused of children based on her work at the Kinsey Institute, implied that she participates and performs in porn by describing her as a "porn professional" and repeatedly claiming that she attends an awards show for pornography performers, and attempted to discredit her work by alleging that she is "pro-porn," does not have any university affiliations, and does not have any training in biology. *See* Doc. No. 6-1, ¶9-10. After seeing that Hilton was not listed on the UT

18

Health – SA webpage for the neurosurgical faculty, Dr. Prause truthfully and in good faith reported Hilton's harassment to UT Health – SA and inquired as to whether he had an affiliation with the state university. *See* Doc. No. 6-1, ¶¶14-16.

Hilton argues that Dr. Prause's statements were false because she characterized his conduct as sexual harassment.  However, characterizing his conduct as simply "harassment" instead of "sexual harassment" would not have a different effect on the average listener when the underlying conduct is repeatedly accusing another professional of loving pornography, being "pro-porn," appearing in porn, attending pornography awards, and sexually abusing children based on her affiliation with the Kinsey Institute.  Because Defendants have therefore shown that their statements about Hilton were substantially true by a preponderance of the evidence, the Court may dismiss these claims pursuant to TEX. CIV. PRAC. & REM. CODE §27.005(d).

2.  Defendants Official Complaint is Protected by a Common Law Qualified Privilege

In addition to the defense of truth, Defendants have shown that their communications with UT Health – SA are protected by the common law qualified privilege.  Defendants are entitled to assert this privilege when a statement is made in good faith, concerns a subject matter which is of sufficient interest to the Defendants or is in reference to a duty that the Defendants owe, and are communicated to another party having a corresponding interest or duty.  *San Antonio Credit Un. v. O'Connor*, 115 S.W.3d 82, 99 (Tex.App.—San Antonio 2003, pet. denied). Whether a qualified privilege exists is a matter of law.  *Denton Publ'g v. Boyd*, 460 S.W.2d 881, 884 (Tex.1970).

Here, Defendants have already shown that Dr. Prause's report to UT Health – SA was brought in good faith, that is, without actual malice or reckless disregard for its truth.  *See* Section III(B)(3), *supra*; *Randalls Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 641 (Tex.1995). Defendants can show that the communication is sufficient interest to them, as Dr. Prause clearly

19

has a personal interest in whether she is subjected to harassment intended to disparage her professional activities and research, and Hilton's harassment, unverified credentials and accusations of child abuse involve a matter of public interest. *Cain v. Hearst Group*, 878 S.W.2d 577, 582 (Tex.1994). Finally, Defendants can show that the communication was made to an entity with a corresponding interest or duty, as Dr. Prause's communication was made the UT Health – SA's general counsel and the official designated to respond to complaints of harassment at this state university. *See* Doc. No. 6, pp. 14-15; 6-1, ¶¶14-16.

Because Dr. Prause has established buy a preponderance of the evidence that a qualified privilege protects her reports to UT Health - SA, the Court may dismiss Plaintiff's claims pursuant to TEX. CIV. PRAC. & REM. CODE §27.005(d).

# V
# PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the ruling and/or oral argument on Defendants' motion to dismiss based on the Texas Anti-SLAPP statute be stayed until September 25, 2019 to allow Defendant the statutorily-required time to file a supplemental brief on the new claims asserted in Plaintiff's First Amended Complaint; additionally and/or in the alternative request that the Court stay any ruling on Defendants' motion to dismiss pending the Fifth Circuit's decision in the pending appeals of *Klocke v. Watson*, No. 17-11320 (orally argued Sept. 5, 2018) and *Van Dyke v. Retzlaff*, No. 18-40710; request that the Court dismiss Plaintiff's claims against Defendants based on Defendants' complaint to UT Health-SA on the grounds that it is barred under the Texas Anti-SLAPP statute; award Defendants their fees in defending this lawsuit as required under the Texas Anti-SLAPP statute; and grant all such other and further relief to which Defendants may show themselves justly entitled.

Respectfully submitted,

By:     */s/ Claire W. Parsons*
        Claire W. Parsons
        State Bar No. 24051159
        909 Fannin Street, Suite 3300
        Houston, Texas  77010
        Telephone:  713-353-2000
        Facsimile:  713-785-7780
        Claire.Parsons@wilsonelser.com

        **ATTORNEYS FOR DEFENDANT**
        **NICOLE PRAUSE AND LIBEROS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify I circulated a copy of the foregoing document in conformity with the Federal Rules of Civil Procedure to all counsel registered to receive service through the Court's CM/ECF system on August 22, 2019.

***Via CM/ECF***
Daniel W. Packard
Samuel W. Packard
1100 NW Loop 410, Suite 104
San Antonio, Texas 78213
Fax: 210-340-8787
dan@packardfirm.com
samuel@packardfirm.com
Attorneys for Plaintiff

                    */s/ Claire Parsons*
                    **Claire Parsons**

21